Lormore *v.* Campbell.

⎯⎯⎯⎯•  •  •⎯⎯⎯⎯

## WILLIAM J. LORMORE and others *vs.* JOHN CAMPBELL, ROSE CAMPBELL and others.

In an action against husband and wife, brought by judgment creditors of the husband, to set aside conveyances made by the defendants, as fraudulent, the examination of the husband, taken in supplementary proceedings against him, instituted by another creditor, is legitimate evidence, so far as it affects the husband.

But neither the testimony, the acts, nor the declarations of the husband can be used as legal evidence to implicate the wife, or to fix her conduct as fraudulent, or to divest her of her estate. And if such testimony is given, before a referee, it is his duty, upon the motion of the wife, to strike it out, if he does not intend to consider it evidence against her. PARKER, J. dissented.

A finding of fact, by a referee, that conveyances were made with intent to hinder, delay and defraud the future creditors of the grantor, when the whole case shows that there were then no creditors to be defrauded, is, in law, simply absurd, or rather, a legal impossibility. *Per* POTTER, J.

Our statute of uses and trusts only makes conveyances fraudulent and void as against the creditors of the grantor at the time of the conveyance.

Even though a conveyance be voluntary, it may be upheld as against the subsequent creditors of the grantor.

Where a wife has an equitable interest in land conveyed to her husband, by reason of her having paid a part of the purchase money, such interest will be protected, as against her husband's *subsequent* creditors.

THIS action is brought by the plaintiffs, as judgment creditors of the defendant John Campbell, to set aside certain deeds of real estate, situate in the city of Elmira, made by him to the defendant Schuyler C. Rey-

nolds, and by said Reynolds to the defendant Rose Camp- bell, the wife of said John, on or about the 25th day of January, 1867, and recorded in the clerk's office of Chemung county, February 22, 1869, on the ground that the same were fraudulent and void, as against the plaintiffs. Or, that said deeds be declared only a mortgage from the husband to the wife, as security for any actual indebtedness, from him to her, and that there be an accounting between them as to the amount actually due from one to the other.

The real issues raised by the pleadings are as to the fraud and ownership of the property in question.

At the time of the marriage of the defendants, John and Rose Campbell, Rose had a small amount of property of her own, in money, and had two cows. She had small sums of money given to her by persons other than her husband, amounting, perhaps, to $50 or $60. She took in washing and boarders, and by agreement between herself and her husband, she was to have the profits and earnings received from those sources. The defendants, John Campbell and wife, lived together without entirely keeping separate accounts, but contracts were made by them for the purchase of several lots of land in the city of Elmira, on some of which the defendant Rose claimed that she paid the consideration from the sources above mentioned, two of which lots were conveyed directly to the defendant Rose. These lots subsequently greatly rose in value, and were sold at the increased values, and the proceeds invested in other lots, and buildings and improvements were placed and made thereon, the title to which other lots was taken in the name of John Campbell, and which other lots also increased in value, to about $5000 or $6000 by the beginning of the year 1867. It is claimed by Rose Campbell that about this time she first discovered that the title had been taken in the name of her husband. Both John and Rose were illiterate; nei-

ther could write, or read writing. John was free from debt, but was in the habit of drinking intoxicating liquors to excess.

In January 1867, Rose consulted counsel, one S. C. Reynolds, upon whose advice deeds of conveyance were prepared from John to said Reynolds, and from Reynolds to Rose, for the purpose of transferring the title from John, the husband, to Rose, the wife. No consideration was paid by Reynolds to John, except, perhaps, the nominal one of $1. And no consideration was paid by Rose to Reynolds, except, perhaps, the dollar paid to John, and the expenses of preparing the quit-claim deeds for that purpose. And as Reynolds testifies, he advised Rose that she need not have her deeds recorded until they chose to do so, as they were then scant of money. After this, and in February 1867, John Campbell commenced the business of a grocery store, purchasing goods of the plaintiffs and others on credit, and falsely representing himself to be the owner of unincumbered real estate worth $8000 or $10,000, but truly stating that he had no money. The plaintiffs having searched the clerk's office and finding an apparent title in John, upon the record, gave him credit and sold him liquors, to an amount exceeding $2000, and received payments from time to time, till in December of the same year, when John failed, indebted to them in the sum of about $800, as a balance, and for which balance they obtained a judgment. Execution thereon being issued and returned unsatisfied, this action was brought against John Campbell and Rose his wife, and S. C. Reynolds, to set aside the deeds of conveyance last referred to, as being void as against the creditors of John Campbell, or to treat the deeds as mortgages to Rose Campbell, and to have an accounting, &c.

The issues were referred to a sole referee, who reported as follows:

1st. That the plaintiffs, on or about the 16th day of

Lormore *v.* Campbell.

March, 1868, recovered a judgment against the. defendant John Campbell, for the sum of $838.38, in an action then pending in the 'Supreme Court, which judgment was on the same day duly entered and docketed in the clerk's office of Chemung county, and an execution on said judgment was duly issued against the property of said defendant John Campbell, and was delivered to the sheriff of said county, who returned the same wholly unsatisfied, as is alleged and set forth in the complaint in this action, and which said judgment remains wholly unpaid.

2d. That the defendant John Campbell, on the 25th day of January, 1857, and previous thereto, was the sole owner of the premises described in the complaint in this action, and had title thereto both legal and equitable.

3d. That the defendant Rose Campbell, previous to the said 25th of January, had no title to said premises, legal or equitable, or right therein or thereto, other than such as resulted by law from her marital relation of wife of the defendant John Campbell.

4th. That on the said 26th of January, 1867, the defendant John Campbell conveyed the said premises 'by deed, without consideration, to the defendant Schuyler C. Reynolds, who at the same time conveyed the said premises by deed, also without consideration, to the defendant Rose Campbell, the wife of the defendant John Campbell.

5th. That at the time of the said conveyances the defendant John Campbell was not indebted to the said Rose Campbell for money or property advanced by her for or towards the payment of the purchase money of the said premises, or otherwise.

6th. That the said conveyances were made with intent on the part of the defendants, John Campbell and Rose Campbell, to hinder, delay and defraud the creditors of the defendant John Campbell.

And the referee found and reported, as matters of law, that the said conveyances were, and each of them was,

void as against the plaintiffs in this action; and should be and were thereby so declared as the judgment of this court; that an injunction order be allowed restraining the defendants and each of them from disposing of, transfering, incumbering, or in any manner interfering with said premises or any part thereof; and that a receiver be apapointed, with the usual powers and duties, to whom said premises should be conveyed; and who should be authorized and directed to sell the same, or. so much thereof as should be necessary for that purpose; and apply the proceeds, or so much thereof as might be necessary, to the payment of the plaintiff's judgment, and interest thereon, with the costs of this action.

Exceptions were duly made to all these findings of fact and conclusions of law, and from the judgment entered thereon an appeal was taken to this court.

*S. B. Tomlinson*, for the plaintiffs.

*Smith, Robertson & Fassett*, for the defendants.

POTTER, J.  1st. On the trial of this action before the referee there was introduced as evidence in the case, on the part of the plaintiffs, the examination of John Campbell, taken in supplementary proceedings before a referee, on the part of a creditor of John Campbell.  This was legitimate evidence in the case, so far as it affected John Campbell, and could not have been excluded as evidence in the case for that purpose.  2d. So, too, on the trial, John Campbell was sworn as a witness, and gave testimony which it was claimed was evidence against the defendant Rose, or at all events was evidence tending to show fraud in the transfer of the said property.  3d. So, too, the declarations of John Campbell made to third persons, showing fraud, were proved on the trial.  As against John Campbell, all this evidence was proper, and could

Lormore *v.* Campbell:

not have been excluded as evidence in the case. But neither the testimony, the acts, nor the declarations of John Campbell, could be used as legal evidence to implicate Rose, or to fix her conduct as fraudulent; or to divest her of her estate.

Near the end of the case, and after this testimony had been given, three several motions were made by the counsel of Rose Campbell, before the referee, to strike out the above described evidence as against Rose Campbell. The referee denied each of the said motions, and her counsel duly excepted. We can only regard this ruling as being in effect a decision that this was proper legal evidence against Rose. Such is the necessary effect of the decision. It is more than mere presumption; it is the express negative of a legal and proper request. If he did not intend to consider it as evidence against her, it was his duty to strike it out. This ruling I regard as so clearly erroneous that the judgment must be reversed upon that ground alone.

As the case will doubtless be again tried, to avoid misapprehension, or the belief that the findings and conclusions of law of the referee would be held sound, it might as well be remarked that I do not concur in either the second, third, fifth or sixth findings of fact, nor in his conclusions of law.

When, on the 25th of January, 1867, John Campbell conveyed, and caused to be conveyed, the premises in question, he had no existing creditor to be defrauded. It is neither alleged in the complaint, nor found by the referee, that these conveyances were made to defraud future creditors. How then could creditors be defrauded? The finding of the fact by the referee, that the conveyances were made with intent to hinder, delay and defraud the creditors of John Campbell, when the whole case shows there were then no creditors to be defrauded, is, in law, simply absurd, or rather a legal impossibility. There is

no evidence in the case to sustain it as a fact, and the law is clearly to the contrary. If it had been alleged in the complaint, that these conveyances were made with intent to defraud the future creditors of John, and the referee had, upon sufficient evidence, so found, such a case could be sustained; but neither the complaint, nor the trial, proceeded upon any such theory, nor is the report of the referee to that effect.

Our statute of uses and trusts only makes conveyances fraudulent and void as against the creditors at the time of the conveyance. (1 *R. S.* 728, § 52. *Garfield* v. *Hatmaker,* 15 *N. Y.* 475.)

But Rose Campbell had, by all the testimony, an equitable interest in the estate, to some extent, if not to the whole. She had some money of her own. She had money advanced to her by persons other than her husband. She had two cows which were turned in towards the purchase of the first lots. Her property remained in it. The increase in value of the property was hers, and did not belong to her husband's *future* creditors. She paid a valuable consideration for the property; it was a contract of purchase. (*Dygert* v. *Remerschnider,* 32 *N. Y.* 639, *per Wright, J.*)

But even if the conveyance from John Campbell to Reynolds, and that from Reynolds to Rose, had been voluntary, the conveyances, as against subsequent creditors of John, would be upheld. (*See Dygert* v. *Remerschneder, supra,* 648, *and authorities cited.*) And see 2 *R. S.* 127, which declares " that any conveyance or change shall not be adjudged fraudulent as against creditors or purchasers solely upon the ground that it was not founded upon a valuable consideration."

The errors, however, of the referee are such that the judgment should be reversed, and a new trial ordered, with costs to abide the event.

---

PARKER, J. In regard to the denial of the motion to strike out the testimony of the defendant John Campbell, and the proof of his declarations, as evidence against the defendant Rose Campbell, I am inclined, under the case of *Quin* v. *Lloyd*, (41 *N. Y.* 349,) to think that the referee was right, and cannot agree that this was cause for reversing the judgment.

Upon the merits, I think, even if the referee might, from the evidence, find that John Campbell had an interest in it, he went too far in ignoring the plain interest of Rose therein, and holding that John had the entire interest.

I therefore concur in the reversal of the judgment, and the granting of a new trial.

MILLER, P. J., also concurred.

[THIRD DEPARTMENT, GENERAL TERM, at Binghamton, June 6, 1871. *Miller*, P. J., and *Potter* and *Parker*, Justices.]