ARNOLD T. NIVER, Respondent, *v.* MELVILLE M. CRANE et al., Appellants.

A judgment creditor's action, whether instituted under the Revised Statutes (2 R. S. 174, §§ 38 *et seq.*), or the Code of Civil Procedure (§§ 1871 *et seq.*), can reach only property belonging to, or things in action due to the judgment debtor or held in trust for him. The fact that the debtor paid the consideration for property conveyed at his instance to another does not alone authorize a judgment directing the taking of the property to satisfy the debt.

Under the provisions of the statute of uses and trusts (1 R. S. 728, §§ 51, 52), which declares that a grant made to one person, the consideration for which is paid by another, shall be presumed fraudulent as against the creditors at that time of the person paying the consideration, and where fraudulent intent is not disproved, a trust shall result in favor of such creditors, to make out such a trust, the consideration must be paid at or before the execution of the conveyance. If the grantee makes the purchase with his own money or credit, no subsequent transaction, whether of payment or reimbursement by another, can produce such a trust.

(Argued December 11, 1884 ; decided January 20, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made September 6, 1882, which affirmed a judgment in favor of the plaintiff, entered upon a decision of the court on trial at Special Term.

The complaint in this action alleged an indebtedness from the defendant Melville to the plaintiff, accruing before the

4th of June, 1869, for which he recovered judgment on the 16th of April, 1881, in the sum of $1,982.60. It was duly docketed, and after the return of an execution unsatisfied this action was commenced. As ground for relief, the plaintiff stated that on the 28th of December, 1875, Melville purchased of one Hathaway and others certain real estate and personal property then on it, in the town of Groton, Tompkins county, and, for the purpose of defrauding his creditors, had the contract therefor drawn in the name of his wife, the defendant Ellie M.; that payments to the amount of $2,000 were made on the contract out of profits of the business carried on upon the premises, and the property, by direction of Melville, was conveyed to the said Ellie M. in form, but really for his own benefit. The deed bears date December 20, 1876, and purports to be upon a consideration of $8,000 by her paid. It recites that the premises are subject to a mortgage of $2,000, made by one Wycoff, which she assumes and agrees to pay. The plaintiff also declares that for the like fraudulent purpose the defendant Melville, on the 30th of April, 1880, exchanged the property above described, both real and personal, for other property in the town of Moravia, in the county of Cayuga, and caused it also to be conveyed to the said Ellie M.; that it was so done, and the title is ostensibly and apparently in her, although, as the plaintiff alleges, "the defendant Melville is, in fact, the real owner thereof"; that the whole consideration for the conveyance was $8,500, none of which has, in fact, been paid from her own and separate estate, but all that has been paid thereon has been paid by the defendant Melville out of his own property. This last conveyance is dated April 30, 1880, runs from one Kniffin, recites the payment of $8,500 as its consideration, conveys to Ellie M. Crane the premises above referred to, and declares that they are subject to two mortgages, one of $2,000 and another of $3,000, which she agrees to pay as part of the consideration-money. Both deeds were duly recorded.

The plaintiff, so far as material to any question now raised, demands judgment:

*First.* Declaring that the Groton property was paid for by, and in fact belonged to, the defendant Melville; that the deed to Ellie M. was void, and that she holds the property, or its avails, in trust for the said Melville, and liable for the payment of the plaintiff's judgment.

*Second.* That the deed to Ellie M. of the Moravia property is void, and that she holds the property in trust for him, and asks that the judgment of the plaintiff be declared a lien thereon.

*Third.* That the lands thus in form held by her be by the judgment of the court sold, and out of the avails thereof that the plaintiff's judgment be fully paid.

The defendants answered separately. Ellie M. acknowledged the several conveyances to have been made to her for the consideration in them stated, and subject to the mortgages described. She denies all allegations tending to show fraud, or that the consideration, or any part of it, was paid by her husband. As to the Groton property, she alleges that she contracted for its purchase in December, 1875; that the article of agreement was between the said Hathaway and others of one part, and herself of the other part; that by its terms $1,000 was to be paid down, $1,000 in one year from its date, when the deed was to be given to her upon her assuming and agreeing to pay the mortgage of $2,000, and securing the balance of the purchase-price by a mortgage on the premises; that in accordance with the terms of this agreement she did, at the time of signing the same, pay out of her own separate estate the $1,000 provided to be paid, and at the end of the year the second $1,000, and received the deed referred to, at the same time giving back a mortgage for the balance of the purchase-money; that no part of these payments was made with the money of Melville M., nor was the purchase for his benefit or in his interest, but solely for herself, and since the execution of the contract she has had full possession of the property, and its use, profits and control. And so, in substance, as to the Moravia premises described in the deed from Kniffin; that she made the exchange and assumed the payment of the mort-

gage liens, as stated in the deed already referred to. She also avers that since December, 1875, Melville M. has been her agent in the transaction of all her business, and has conducted it by her express direction and for her benefit.

The answer of the defendant Melville M. denies the allegations in the complaint so far as they are material, and shows that the conveyances to his wife were made upon a consideration paid by her, and that he had no concern in either.

The court found that the plaintiff was a judgment and execution creditor of Melville M., as set out in the complaint; that the Groton property was purchased by Melville M., at the times, and payments made by him, and conveyances taken in the way and for the fraudulent purpose stated in the complaint, and in substance that the payments were from the profits of the business carried on upon the premises, except that Ellie M. paid on the contract for the Groton property, when signed, the sum of $182 of money belonging to her separate estate. He finds that the conveyance was subject to a mortgage of $2,000, and that she gave back a mortgage of $4,000, part of the purchase-price; that no portion of the purchase-price of the property was paid by Ellie M., except the said sum of $182. He further finds that on the 30th of April, 1880, Melville M. exchanged the Groton property for property situated in the village of Moravia, and upon such exchange agreed to pay $400 as the difference between the value of the two properties; that the deed was taken in the name of the defendant Ellie M. Crane, who gave her note for this $400 to Kniffin, but that it was subsequently paid by Melville M.; that the whole consideration for the Moravia property was the transfer of the Groton property and this note of $400; that the purpose of taking the title in the name of Ellie M. was to keep it beyond the reach of creditors of Melville M., and with intent to delay and defraud them.

And as conclusion of law he found that the conveyance to the defendant Ellie M. Crane of the Moravia hotel property was fraudulent as against the plaintiff's judgment; that the transfer to her of the personal property connected with the

Groton property was also fraudulent as against it, and directed
that a receiver be appointed in the action, and the defendant
"Ellie M. transfer to him all her right, title and interest in and
to said real and personal property; that the receiver shall sell
the property, and out of the proceeds pay to the plaintiff, or
his attorney, the amount of his judgment." Upon proper ex-
ceptions to these findings an appeal from the judgment was
taken to the General Term, where it was affirmed, and from
that judgment an appeal is now taken to this court.

*M. M. Waters* for appellants. The owner of the hotel did
not imperil her property by permitting her husband to act as
her agent in reference to it, even if it be conceded that she pur-
posely refused to allow him any interest therein to prevent his
creditors from getting any claim to those profits. (*Knapp* v.
*Smith,* 27 N. Y. 277; *Buckley* v. *Wells,* 33 id. 518; *Gage* v.
*Douchy,* 34 id. 293; *Abbey* v. *Deyo,* 44 id. 343; *Atwood*
v. *Holcomb,* 39 Conn. 270; *S. C.,* 12 Am. Rep. 386; *Freck-
ing* v. *Rolland,* 53 N. Y. 422.) But whether the note
was given to keep up appearances, or after the debt for the
borrowed money was paid by Crane, or not, his creditors did
not acquire any resulting trust in the Moravia property, as such
trust does not arise after the deed. (*Jackson* v. *Moore,* 6
Cow. 706; *Gerard's Titles to Real Estate,* 279.) The defend-
ant Ellie M. Crane still remains liable on her personal obliga-
tion to pay the mortgage assumed by her on the Groton prop-
erty $2,000; on her own purchase-money $4,000; on the mort-
gages assumed on the Moravia property, except so far as paid
$5,100. (*Mc Vey* v. *Cantrell,* 70 N. Y. 295; *Herrington* v. *Rob-
ertson,* 71 id. 280; *Frecking* v. *Rolland,* 53 id. 423; *Cashman*
v. *Henry,* 75 id. 103.) There is a new and independent result-
ing trust in favor of the general creditors of the party paying
the consideration in every case where the conveyance is fraudu-
lently made to another with his assent. (*McCarthy* v. *Bost-
wick,* 32 N. Y. 59.) Crane is not a proper party to this action,

and his acts without his wife's knowledge are wholly incompetent to affect her title. (*Jackson* v. *Leggett*, 2 Barb. 575.) This action was not founded on any right secured by either the mortgage or the tax-list. (*Goodwin* v. *Mass. M. L. Ins. Co.*, 73 N. Y. 480; *Chrysler* v. *Renois*, 43 id. 209; *Jackson* v. *Root*, 18 Johns. 60; *Betts* v. *Jackson*, 6 Wend. 181; *May's Ex'rs* v. *Hill*, 5 Litt. 309.)

*A. P. Smith* for respondent. As to the defendant Melville M. Crane was the owner of the avails of the hotel business under the facts established. (*Marsh* v. *Hoppock*, 3 Bosw. 478; *Freeman* v. *Orser*, 5 Duer, 476; *Sherman* v. *Elder*, 24 N. Y. 381; *Van Sickle* v. *Van Sickle*, 8 How. 265; *Switzer* v. *Valentine*, 4 Duer, 96; *O'Leary* v. *Walter*, 10 Abb. [N. S.] 439; *Brooks* v. *Schwerin*, 54 N. Y. 343; *Filer* v. *N. Y. C. R. R. Co.*, 49 id. 56.) The services of the wife belonged to the husband. (*Cuck* v. *Quackenbush*, 13 Hun, 107; *Bean* v. *Kiah*, 4 id. 171; *Birbeck* v. *Ackroyd*, 11 id. 365; *Filer* v. *N. Y. C. R. R. Co.*, 49 N. Y. 47; *Reynolds* v. *Robinson*, 64 id. 589; *Coleman* v. *Burr*, 13 Week. Dig. 153.) Whether, in a given case, the transaction is sincere and *bona fide*, or a colorable device to cheat the creditors of the husband, is a question of fact to be determined by the jury or other forum intrusted with the decision of such questions. (*Knapp* v. *Smith*, 27 N. Y. 280; *O'Leary* v. *Walter*, 10 Abb. [N. S.] 439.) In this case an action could not have been sustained against the wife for the furniture bought by the husband for the hotel, nor the meat and other supplies for the hotel (*Travis* v. *Scriba*, 12 Hun, 391), nor would she have been liable for a violation of the license granted to him and by virtue of which the entire profits of the business were made. (*O'Leary* v. *Walter*, 10 Abb. [N. S.] 439.) The purchase of the Groton property having been made by the judgment debtor and paid for by him from his own property, and the title taken in the name of his wife, the law presumes the conveyance fraudulent as against this plaintiff, who was a creditor at the time. (2 R. S. 1105, 1106, §§ 51, 52 [6th ed.]; *Garfield* v. *Hatmaker*,

15 N. Y. 475; *Mead* v. *Gregg*, 12 Barb. 653; *Baker* v. *Bliss*, 39 N. Y. 73; *Wood* v. *Robinson*, 22 id. 564; *Bk. of America* v. *Pollock*, 4 Edw. Ch. 225; *Jackson* v. *Forrest*, 2 Barb. Ch. 576; *Russell* v. *Allen*, 10 Paige, 249; *McCartney* v. *Bostwick*, 32 N. Y. 53; *Ocean Nat. Bk.* v. *Olcott*, 46 id. 12; *Watson* v. *Le Row*, 6 Barb. 481; *Gillette* v. *Bate*, 86 N. Y. 87.) The husband is a necessary party to this action. (*Ocean Bk.* v. *Olcott*, 46 N. Y. 12; *Wood* v. *Robinson*, 22 id. 564.) It makes no difference under the statute whether the consideration was paid by M. M. Crane, the debtor, before or after the conveyance to his wife. (2 R. S. [6th ed.] 1106, § 52.)

DANFORTH, J. We are referred to no principle of equity upon which the relief sought by the plaintiff can, under the circumstances of this case, be given. A judgment creditor's action, whether instituted under the provision of the Revised Statutes (Vol. 2, tit. 2, part 3, chap. 1, art. 2) or the Code of Civil Procedure (Tit. 4, art. 1, chap. 15), can reach only property belonging to, or things in action due to, the judgment debtor, or held in trust for him. Neither statute goes further. Here the sole fact on which the plaintiff relies is the alleged payment of consideration by his debtor for property conveyed at his instance to the other defendant. But as between the two, that circumstance is immaterial. The property is, as against him, the wife's own, absolute property, whether he paid for it, or whether, as she asserts, the payment was made from her own estate. The debtor never had the title, nor was it at any time subject to the plaintiff's judgment or execution. Nor would it be if the deeds, under which she holds, should be canceled. The debtor had neither title, nor any legal or equitable interest to which either could attach. This follows from the statute, which declares (1 R. S. 728, § 51) that where a grant for a valuable consideration shall be made to one person, and the consideration therefor shall be paid by another, " no use or trust shall result in favor of the person by whom such payment shall be made, but the title shall vest in the person named as the alienee in such conveyance."

As his case is presented by the pleadings, the plaintiff, therefore, must fail. (*Garfield* v. *Hatmaker*, 15 N. Y. 475; *McCartney* v. *Bostwick*, 32 id. 53; *Everett* v. *Everett*, 48 id. 218.) The statute last cited, however, contains an exception, and provides (§ 52) that such conveyance shall be deemed fraudulent as against the creditors, at the time, of the person paying the consideration, and declares that "where a fraudulent intent is not disproved, a trust shall result in favor of such creditors, to the extent that may be necessary to satisfy their just demands," and the respondent seeks to maintain the judgment as one coming within this statute. It should, we think, be a sufficient answer that it was not put upon that ground by the complaint, nor at the trial. But waiving that, we are not able to see how the claim can be supported. The doctrine to be applied is well settled. To make out such a trust, the money must be paid at or before the execution of the conveyance, and not after. (*Jackson* v. *Moore*, 6 Cow. 706; *Botsford* v. *Burr*, 2 Johns. Ch. 405; *Steere* v. *Steere*, 5 id. 1; *Jackson* v. *Seelye*, 16 Johns. 197; *Rogers* v. *Murray*, 3 Paige, 390, 391; *Russell* v. *Allen*, 10 id. 249.) The whole foundation of a trust of this nature is the payment of the money by the *cestui que trust*, the real, not the nominal purchaser, and so its conversion into land.

What are the facts here? The Moravia property, which is alone in question, was paid for by Mrs. Crane — no part of it by her husband. Kniffin, the former owner of that property, took nothing from him. She paid by a conveyance of the Groton property, of which she had the legal title, assuming and agreeing to pay $4,500 of existing mortgages, and giving her own note for $400. If it be said that the debtor brought about the exchange of property, or even that he subsequently out of the profits of the business conducted on the premises paid the note, it cannot affect this question. The grantee's note, the grantee's *assumpsit* of the mortgages, and her conveyance in fact paid the consideration. Her credit and her property were accepted by the grantor. He had no claim at any time against the husband. So, if we go back to the Gro-

ton property, we find from the uncontradicted evidence that
Mrs. Crane first took a contract in writing, under which she
agreed to pay the purchase-money, and by which the then
owners, Hathaway and others, agreed to convey the property
to her. The husband was not named. Upon the execu-
tion of the contract she paid $1,000, made up from $183
which she then had of her own, and $817 which she borrowed
of her father-in-law upon her own note. Then when the
deed was given she assumed payment of the existing mort-
gage, and executed another upon the premises for the
unpaid purchase-money. In this case, therefore, it was her
money and her credit which furnished at least $7,000 of the
consideration. The other $1,000 is said to have come from
the profits of the business carried on upon the premises, and
that payments upon the mortgage were made from the same
source. Upon the point now under consideration, I do not
deem it material to inquire whether the business was that of
the wife or of the husband. From what has been already
stated, it is apparent that a part of the consideration came from
Mrs. Crane and not from her husband — enough, therefore, to
show that the plaintiff's case is not within the exception cre-
ated by the statute.

The respondent cites various cases as supporting the judg-
ment. (*Wood* v. *Robinson*, 22 N. Y. 564; *McCartney* v.
*Bostwick*, 32 id. 53, *supra*; *Baker* v. *Bliss*, 39 id. 70; *Ocean
Nat. Bank* v. *Olcott*, 46 id. 12.) In each of these the entire
consideration for the property sought to be reached was paid
by the debtor at or before the conveyance, and so they came
directly within the statute (*supra*), and entitled the creditor to
the benefit of the trust declared in his favor.

On the other hand, the doctrine that the trust, in order to
exist, must have been co-eval with the deeds, and that after
one person has made a purchase with his own money or credit,
no subsequent transaction, whether of payment or reimburse-
ment, can produce such a trust in his favor, is well settled.
Says Chancellor KENT in *Botsford* v. *Burr* (*supra*): " There
never was an instance of such a trust so created, and there

never ought to be, for it would destroy all the certainty and security of conveyances of real estate. * * * The trust results from the original transaction at the time it takes place, and at no other time; and it is founded on the actual payment of money, and on no other ground." And in *Rogers* v. *Murray* (*supra*), it is said to be "impossible to raise a resulting trust so as to divest the legal estate of the grantee by the subsequent application of the funds of a third person to the improvement of the property, or to satisfy the unpaid purchase-money." Such contributions and payments, if any there are, may doubtless in a proper case be the ground of some relief to the creditor of the third person, but it has neither been sought for in this action, nor is the evidence sufficient to warrant it. The plaintiff instituted the action on the ground that there was in favor of his debtor a trust of original ownership. He succeeded in the court below upon the statute which denies ownership to the debtor, but makes the consideration paid by him available to the creditor. In either aspect we think the case fails, and the complaint should have been dismissed.

The judgment of the General and Special Terms should, therefore, be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.