ANNA SCHIERLOH, Respondent, *v.* MATHILDA SCHIERLOH, Appellant.

*Action of ejectment — when a lien against the premises in favor of the occupant is no defense thereto — trust resulting in favor of a person furnishing a portion of the purchase price — evidence.*

Kasten Schierloh died intestate November 30, 1887, seized of certain real estate, and leaving him surviving his widow, his mother and seven brothers and sisters, his only heirs at law. His widow continued in, and claimed the right to, the possession of the real property, and an action of ejectment to recover possession thereof was brought by his mother, who claimed to be the owner of an estate for life therein and entitled to the possession thereof, subject to the dower right of the defendant.

The widow, as a defense to such action, alleged that the premises were bought and paid for with money furnished the intestate by her; that he applied to her for the money and she gave it to him to pay for the property, he promising that if she furnished the money he would have the premises conveyed to her. That relying on such promise she delivered to him the money, but that without her knowledge or consent he caused his name to be inserted in the deed; and in her prayer for relief she asked that she be adjudged to be the equitable owner of the premises.

It was shown that the purchase price of the property was $13,500, of which $5,500 was paid in cash, and the balance was secured by a purchase-money mortgage, which the intestate had reduced by payments from time to time to $3,000. Of the amount of such purchase price the defendant claimed to have furnished $1,175, and the jury found that the defendant, at the request of her husband, furnished him with $1,175 with which to pay in part for the property, that at about the time of the delivery of the deed, he promising that, in consideration thereof, he would have her made the grantee in the deed, which promise he did not keep.

*Held*, assuming the facts to be as found by the jury, that the defendant failed to establish that the equitable title to the premises was in her;

That the establishment by her of a lien against the property would not constitute a defense in this action, to which neither the heirs at law nor the legal representatives of the intestate were parties, for which reason, if for no other, the defendant could not have a decree of specific performance;

That the evidence did not justify a finding that Kasten Schierloh, during his lifetime, permitted and directed the defendant to collect, receive and dispose of the rents and issues of such property as her own, she being at that time under the belief that such property was hers, and that she was entitled to the possession of the same, and to the enjoyment of the rents derived therefrom.

Where a person furnishes and understands that she is furnishing only a portion of the purchase price of premises, such portion not being an aliquot part thereof, and the grantee named in the conveyance takes the title to the same absolutely in his own name, without the consent or knowledge of the person furnishing such portion of the purchase price, no use or trust results in favor of the person by whom such portion of the purchase price was furnished.

APPEAL by the defendant, Mathilda Schierloh, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the city and county of New York on the 12th day of May, 1892, after a trial at the New York Circuit.

*Geo. A. Yeaman* and *E. A. Jacobs*, for the appellant.

*Geo. W. Roderick*, for the respondent.

PARKER, J.:

The legal estate of the premises in question was in Kasten Schierloh at the time of his death, November 30, 1887.

He left him surviving his widow, this defendant, his mother, this plaintiff, and seven brothers and sisters, his only heirs at law.

Some months after his decease, his widow continuing in and claiming the right to possession of the property, this action was commenced to recover possession, the plaintiff claiming, as the mother of deceased, to be the owner of an estate for life therein, and entitled to the possession thereof, subject to the dower right of the defendant.

The defendant, as a defense to the action, alleged that the premises were bought and paid for with money furnished said Kasten Schierloh by her; that he applied to her for the money to enable him to pay for the property, at the same time promising that, if she would furnish it, he would cause the same to be conveyed to her, and relying upon such promise, she delivered to him the money with which to pay for the property and obtain a conveyance to her, but in violation of his promise, and without her knowledge or consent, he caused his own name to be inserted, and in her

prayer for relief she asked that she be adjudged to be the equitable owner of the premises.

The record discloses that the purchase price of the property was $13,500, of which $5,500 was paid in cash and the balance was secured by a purchase-money mortgage which Schierloh, prior to his death, had reduced by payments made from time to time to $3,000.

Defendant does not claim to have furnished the whole of the money paid at the delivery of the deed, but only $1,175 of such amount. So that it appears, even from the testimony presented on her behalf, that $4,300 of the original payment was made by Schierloh from his own funds, and it is not disputed that the payments in reduction of the principal of the mortgage, aggregating $5,000, were also made by him.

The cause was tried before a court and jury. Five questions of fact were submitted to and answered by them. The result of such questions and answers may be briefly stated as follows : The defendant, at the request of her husband, furnished him with $1,175 with which to pay in part for the property, at about the time of the delivery of the deed, he promising that, in consideration thereof, he would have her made grantee in the deed, which promise he did not keep.

An attentive examination of the testimony upon which the jury founded the finding that Schierloh promised to cause the property to be conveyed to his wife, in consideration of her furnishing the sum of $1,175 towards the payment of the purchase price of $13,500, leaves us in doubt as to the correctness of the finding.

One witness testified that in a casual conversation which Schierloh had with him about the time the property was purchased, which was nearly twenty years before, he said that his wife expected that the deed would be made out to her, but he was going to take it in his own name, as it would help his credit.

Another, that at Schierloh's request he had asked her to let him have the money, and she said she would " if he would put the money in the deed."

And still another testified that he told Schierloh his wife would give him that money if he put her name in the deed, to which Schierloh replied, " Yes, I will." This is the strongest expression

used, and considered in the light of the other testimony of the witness, as well as the evidence to the effect that she would let him have the money if he would put it in the deed, suggests, rather, that the wife was attempting to secure an interest in the property proportionate to her investment, rather than the entire estate.

This witness testifies to another suggestive fact, that when the $1,175 was paid over to Schierloh, in the presence of his wife, the witness prepared the receipt, which Schierloh was requested to, and did sign. It was in these words: "I, the undersigned, receive $1,175 from my wife, through Louis Hahn."

It is worthy of note that pains were taken to secure a receipt for $1,175, but no effort was made to ascertain whether her name was in a deed by which she would now have it appear that she expected to secure a much larger return than her investment.

Again, if an agreement had been made by which she was to become the purchaser of the property, to be paid for by her husband, with the exception of the $1,175, it is a little remarkable that she should have deemed it necessary to exact from him a receipt for the money, as well as his promise that she should have the entire property.

Still another pregnant fact appears : Mrs. Schierloh left her husband in 1884, remaining away from him a few months. During her absence she commenced an action for limited divorce, and then, as she testifies, she for the first time learned that the title to the property was in his name, yet she went again to live with him, and continued to do so down to the time of his death, a period of about three years, and it does not appear that she took any steps whatever during his lifetime to right the wrong which she claims to have suffered at his hands.

But, assuming the facts to be as found by the jury, and adopted by the court, we reach the same conclusion as did the trial court, that the defendant has failed to establish that the equitable title was in her.

As the legal title was in Schierloh at the time of his death, it was necessary for her to establish that she was the owner of the equitable title in order to prevent a recovery in the action. It could not avail her as a defense to establish a lien against the property.

Nor could it be done in this action, to which neither the heirs at law nor the legal representatives of the intestate are parties. For that reason also, if there were no other, defendant could not have a decree of specific performance, and the point made on the appeal touching that subject will not receive other consideration.

We have left then for decision whether, under the facts found, there resulted a trust in favor of the defendant.

The rule at common law was that if lands were conveyed to one person, the consideration for which was paid by another, a trust resulted in favor of the person who paid the price. But our present statute relating to uses and trusts (Part 2, chap. 1, tit. 2, art. 2, § 51, R. S.) provides "where a grant for a valuable consideration shall be made to one person, and the consideration thereof shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made; but the title shall vest in the person named as the alienee in such conveyance, subject only to the provisions of the next section."

To this provision the Legislature very properly made one exception. It declared that its provisions should "not extend to cases where the alienee named in the conveyance, shall have taken the same as an absolute conveyance in his own name, without the consent or knowledge of the person paying the consideration, or where such alienee, in violation of some trust, shall have purchased the lands so conveyed with moneys belonging to another person." (§ 53.)

The latter exception has no application to this case. Whether the former has we are to determine. If the defendant had furnished the whole consideration, there would be no doubt but, under the facts found, she would be within the protection of section 53.

Does the fact that she only furnished and understood that she was only furnishing a portion of the purchase price, take this case without the statute?

The appellant has not called our attention to any case holding that a trust results for the benefit of a person furnishing only a part of the consideration, and it would be strange indeed if such a case could be found unless it should be one holding that a trust resulted as to an undivided one-fifth or one-half of the property, accordingly as the party had contributed a one-fifth or one-half of the purchase money.

Justice BRONSON, in *Sayre* v. *Townsend* (15 Wend. 649), in a learned opinion, reviewing the cases in this State, and England as well, reached the conclusion that the consideration for the whole estate, or for the moiety or one-third part, or some other definite part of the whole, must be paid to be the foundation of a resulting trust, which would necessarily be for such a definite part of the estate as the money contributed would pay for.

In *Garfield* v. *Hatmaker* (15 N. Y. 477), and *Lounsbury* v. *Purdy* (18 id. 515), this question was not presented, and, therefore, cannot be deemed to have been decided; but in the opinions of the court, delivered through Judge COMSTOCK, it was assumed that in order to establish a resulting trust, the whole consideration must be paid by the party claiming it.

In *Niver* v. *Crane* (98 N. Y. 40), the court had under consideration a case which it was claimed was within section 52, and from the similarity of the language employed in sections 52 and 53 the argument and decision of the court under section 52 would be alike applicable to a case claimed to arise under section 53 as here.

Section 52, referring to section 51, provides that "Every such conveyance shall be presumed fraudulent as against the creditors at that time of the person paying the consideration."

Section 53 declares that "The provisions of the preceding fifty-first section shall not extend to cases, where the alienee named in the conveyance, shall have taken the same as an absolute conveyance, in his own name, without the consent or knowledge of the person paying the consideration."

In that case it appeared that the alienee in the conveyance and her husband, who was the debtor of the plaintiffs, each furnished a part of the consideration, and the court said: "From what has been already stated it is apparent that a part of the consideration came from Mrs. Crane, and not from her husband, enough, therefore, to show that the plaintiff's case is not within the exception created by the statute. The respondent cites various cases as supporting the judgment. (*Wood* v. *Robinson*, 22 N. Y. 564; *McCartney* v. *Bostwick*, 32 id. 53; *Baker* v. *Bliss*, 39 id. 70; *Ocean National Bank* v. *Olcott*, 46 id. 12.)

"In each of these the entire consideration for the property sought to be reached was paid by the debtor, at or before the conveyance,

and so they came directly within the statute, and entitled the creditor to the benefit of the trust declared in his favor."

Because the same language is used in each section touching the payment of the consideration, this case is deemed not only in point, but controlling here.

We have observed nothing in conflict with this decision except *Sayre's Case (supra)*, and cases therein cited, and there the only exception suggested is where the contribution of purchase money was of some definite part, such as one-third or one-half.

But defendant is not aided by that case, if it be assumed that it is still the law, for her contribution is not of an aliquot part of the purchase price, nor does she claim to recover an undivided interest.

We have so far considered the defense pleaded and the one which the defendant sought to establish on the trial. Appellant now urges that independently of the statute the equitable title should be held to have been in the defendant.

She urges that the facts of this case bring it within *Freeman* v. *Freeman* (43 N. Y. 34), and kindred cases, where, upon the faith of an oral contract, a party has entered into the possession of, and made substantial improvements on lands, resulting in a determination that the owner of the legal title was estopped from invoking the Statute of Frauds, and adjudging the party in possession to have the equitable title.

It is not claimed that the facts found entitle this case to be regarded within the principle of those cases, but that the evidence required a finding proposed by defendant and refused by the trial court which, had it been found, would have brought this case within the rule which they establish.

The finding requested was as follows : " That thereafter the said Kasten Schierloh, during his lifetime, permitted and directed the defendant to collect, receive and dispose of the rents and issues of said property as her own, she being at the time under the belief that the said property was hers, and that she was entitled to the possession of the same, and to the enjoyment of the rents derived therefrom."

We shall not consider whether, if the facts were in accordance with the request, her contention would be well grounded, for we agree with the trial court in its refusal to so find.

The evidence supported a portion of ·the request, but there were other and substantial portions not authorized.

*Wood* v. *Rabe* (96 N. Y. 414), cited by the appellant, does not aid her. That was an action brought to enforce an oral agreement in which all the parties to be affected by the determination were before the court. The oral agreement purported to create a trust, and the question was whether a court of ·equity could uphold it, notwithstanding the Statute of Frauds.

The court said that the breach of an oral agreement to convey lands is not such a fraud as will authorize the court to compel a conveyance, but that plaintiff was not induced to acquiesce in the oral agreement by the promise alone ; in addition there were his pressing necessities and the assurance of those sustaining confidential relations to him, viz., his mother and her attorney who had been his general guardian, and held that the case was within the principle that one who uses a confidential relation to acquire an advantage, which he ought not in equity and good conscience to retain, the court will convert into a trustee and compel him to restore what he has unjustly acquired.

Were this action of the same character as that, and the necessary parties in court, the facts here would be found to differ in the following essential respects : The oral agreement does not purport to create a trust.

It was not mainly induced by the influence of the husband, but rather by the expectation of the wife, as appears from the evidence in her behalf, of securing by such means her husband's money as well as her own. That she was dealing with him at arm's length is further evidenced by the testimony of an avowed intermediary, who exacted from Schierloh in her presence a receipt for the money which she claims to have furnished.

Nor did she act promptly on discovery that the agreement had been violated by her husband, but waited until death had sealed his lips before attempting in any manner, so far as appears, to assert her claim.

Neither is she attempting to secure merely the sum which the alleged trustee obtained from her under the oral agreement, but in addition nearly nine times that sum which was invested by him.

Other differences exist but need not be alluded to, as the inapplicability of *Wood* v. *Rabe* to this one already sufficiently appears.

We refrain from discussing the other cases cited, but assert that none of them support an interference with the decision of the trial court.

The judgment should be affirmed, with costs.

FOLLETT and O'BRIEN, JJ., concurred.

Judgment affirmed, with costs.